**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF NEW YORK**

JOHN TURNER, on behalf of himself and all others similarly situated,

Plaintiff,

v

NATIONAL INCOME LIFE INSURANCE COMPANY; and Does 1-20,

Defendant.

**CASE NO.** 5:21-CV-0003 (BKS/TWD)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO APPROVE FLSA INDIVIDUAL SETTLEMENT**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. PROCEDURAL HISTORY ........ 3

- A. Plaintiff John Turner's Contracts with NILICO. ........ 3
- B. Plaintiff First Asserted His Claims in California on August 5, 2020. ........ 4
- C. Following the Dismissal of Plaintiff from the *Bell* Action, Plaintiff Filed the Instant Action on January 4, 2021. ........ 5
- D. NILICO Denies Liability and Disputes the Fundamental Premises of Plaintiff's Claims. ........ 5
- E. After Discussing Potential Motion Practice by NILICO, the Parties Engaged in Arm's-Length Settlement Discussions. ........ 7
- F. The Parties Filed a Notice of Settlement and Stipulation for Dismissal. ........ 8
- G. The Key Settlement Terms. ........ 8

III. THE PARTIES' SETTLEMENT IS FAIR AND REASONABLE. ........ 10

- A. Legal Standard for Approval. ........ 10
- B. Plaintiff Faced Significant Litigation Risks in the Absence of this Settlement. ........ 11
- C. Taking into Account Plaintiff's Litigation Risks, the Settlement Amount Is a Fair and Reasonable Compromise of Plaintiff's Claims. ........ 12
- D. The Settlement Avoids Protracted Motion Practice and Uncertainty. ........ 14
- E. Plaintiff's Counsel's Share of the Settlement Amount Is Reasonable. ........ 14
- F. The Settlement Terms Are Reasonable. ........ 15
- G. The Settlement Is the Product of Arm's-Length Negotiations Between the Parties. ........ 15

IV. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. N & A Prods. Inc.*,
No. 19-CV-1703, 2019 WL 5449061 (S.D.N.Y. Oct. 24, 2019)....................13

*Bell et al. v. American Income Life Insurance Company et al.*,
Case No. 2:20-cv-07046-MWF .................... *passim*

*Berry et al. v. Am. Income Life Ins. Co.*,
2:20-cv-00110-LPL, ECF No. 37 (W.D. Pa. Sept. 20, 2020)....................6

*Cheeks v. Freeport Pancake House, Inc.*,
796 F.3d 199 (2d Cir. 2015)....................10

*Chenensky v. New York Life Ins. Co.*,
No. 07 CIV. 11504 (WHP), 2009 WL 4975237 (S.D.N.Y. Dec. 22, 2009)....................6

*Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*,
No. 20-CV-7131 (KMK), 2021 WL 38264 (S.D.N.Y. Jan. 5, 2021) ....................11

*de Jesus Prudente v. Brother's Bakery Cafe Corp.*,
No. 21-CV-594 (RA), 2021 WL 1999465 (S.D.N.Y. May 19, 2021)....................10, 15

*Fisher v. SD Prot. Inc.*,
948 F.3d 593 (2d Cir. 2020)....................14

*Guareno v. Vincent Perito, Inc.*,
No. 14CV1635, 2014 WL 4953746 (S.D.N.Y. Sept. 26, 2014) ....................10

*Lamps Plus, Inc. v. Varela*,
139 S. Ct. 1407 (2019)....................5, 12

*Martin v. Sprint United Mgmt. Co.*,
273 F. Supp. 3d 404 (S.D.N.Y. 2017)....................6, 11

*Medley v. Am. Cancer Soc.*,
No. 10-CIV-3214 (BSJ), 2010 WL 3000028 (S.D.N.Y. July 23, 2010)....................14

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 565 (2013)....................5, 12

*Patterson v. Am. Income Life Ins. Co.*,
No. 4:19-CV-00918-KGB, 2020 WL 6387555 (E.D. Ark. Oct. 30, 2020) ....................6

*Rose v. Nw. Mut. Life Ins. Co.*,
220 F. Supp. 3d 363 (E.D.N.Y. 2016) ....................6

*Saleem v. Corp. Transportation Grp., Ltd.*,
854 F.3d 131 (2d Cir. 2017)....................6

*Stolt-Nielsen, S.A. v. Animal Feeds Int'l Corp.*,
559 U.S. 662 (2010)....................5, 12

*Vasto v. Credico (USA) LLC*,
No. 15 CIV. 9298 (PAE), 2017 WL 4877424 (S.D.N.Y. Oct. 27, 2017), *aff'd*,
767 F. App'x 54 (2d Cir. 2019)....................6, 11

*Watkins v. First Student, Inc.*,
No. 17-CV-1519 (CS), 2018 WL 1135480 (S.D.N.Y. Feb. 28, 2018)....................1, 5, 7

*Young v. Cooper Cameron Corp.*,
586 F.3d 201 (2d Cir. 2009)....................7

*Yunda v. SAFI-G*,
No. 15-CV-8861, 2017 WL 1608898 (S.D.N.Y. Apr. 28, 2017)....................13

*Zorn-Hill v. A2B Taxi LLC*,
Nos. 19-CV-1058, 18-CV-11165, 2020 WL 5578357 (S.D.N.Y. Sept. 17, 2020)....................13

**Statutes**

FLSA, 29 U.S.C. § 201, *et seq*....................5

N.Y. Lab. Law § 651(5)....................6

29 C.F.R. § 541.500....................6, 11

N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.14(a), (c)(5)....................6

## I. INTRODUCTION

Defendant National Income Life Insurance Company ("NILICO" or "Defendant") and Plaintiff John Turner ("Turner" or "Plaintiff") jointly move for Court approval of the Parties' settlement of Plaintiff's individual FLSA claim on the ground that it represents a fair and reasonable compromise of a bona fide dispute between the Parties. Plaintiff asserts against NILICO putative class and collective claims for failure to pay overtime and minimum wages in violation of (1) the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*., and (2) the New York Labor Law ("NYLL"), arising out NILICO's alleged misclassification of Plaintiff as an independent contractor. By his Complaint, Plaintiff purports to represent a class and collective of allegedly similarly situated insurance sales agents and trainees who contracted with NILICO in the State of New York.

NILICO denies Plaintiff's claims and contends that his Complaint is fatally deficient on multiple counts. ***First***, NILICO asserts that Plaintiff's FLSA claim is time-barred. Plaintiff was an insurance sales agent who contracted with NILICO between August 2014 and June 2017. Because Plaintiff's contract terminated on June 27, 2017, and he did not file a civil action until August 5, 2020, NILICO asserts that his claim falls outside of the FLSA's statute of limitations, regardless of whether the two- or three-year limitations period is applied. ***Second***, NILICO contends that Plaintiff (1) was properly classified as an independent contractor and (2) would otherwise meet the criteria for the outside sales exemption even if he were not. ***And third***, NILICO maintains this action cannot proceed on a class or collective basis because Plaintiff is contractually bound to submit his claims to individual binding arbitration.

Plaintiff maintains that his claims are not time-barred, that he was misclassified as an independent contractor and no exemptions apply to him, and that his claims could proceed on a collective basis under the FLSA.[1]

[1] No notice has been issued to potential collective members and no additional potential collective members have opted into this case.

As the foregoing makes clear, Plaintiff and Defendant have a bona fide dispute as to whether Plaintiff is covered by, or entitled to recover any amount under, the FLSA. In light of the legal risks attendant to proceeding with the litigation and in anticipation of NILICO's filing of motions to compel arbitration and to dismiss Plaintiff's FLSA claim on statute-of-limitations grounds, the Parties entered into good-faith, arm's-length negotiations in April 2021 that ultimately produced an agreement to resolve Plaintiff's individual claims for a total of $15,000.

The Parties submit that the settlement constitutes a fair and reasonable resolution of a disputed FLSA claim. Out of the total settlement amount, Plaintiff will receive $14,498 and his attorneys will receive $502, which represent only their actual filing costs and no attorneys' fees. The Parties have, in turn, allocated one-third of Plaintiff's settlement payment (or $4,832.62) to the FLSA claim, and the remaining two-thirds (or $9,665.38) to his NYLL and unasserted but related released claims. The FLSA portion of the settlement payment represents a significant portion of the unpaid wages and liquidated damages Plaintiff could recover under the FLSA, and the FLSA settlement value of $4,832.62 is therefore a reasonable settlement amount. As to Plaintiff's counsel's attorneys' fees, counsel are not seeking any fees. Their costs of $502 represents just 3.34 percent of the total settlement fund, and are only sought for actual filing costs, and are therefore reasonable.

As to the terms of the Settlement Agreement itself, the provisions are consistent with those of similar FLSA settlements that have been approved within the Second Circuit. The release of claims is appropriately limited in scope and calculated to release only (1) the actual claims asserted in this action, and (2) claims that arise out of, are related to, or otherwise could have been asserted in connection with the subject matter of this litigation. The non-disparagement clause is similarly limited in scope in that it includes an express carve-out permitting Plaintiff to make any truthful statements concerning NILICO. Finally, the Settlement Agreement does not include any confidentiality, no-hire, or other provisions that have been found problematic by reviewing courts within this Circuit.

The Settlement Agreement thus embodies a fair, reasonable, and good faith resolution of disputed FLSA claims, and guarantees to Plaintiff a payment that he might otherwise not receive at all were NILICO to prevail in its defense. The Parties, therefore, respectfully request that the Court approve the Settlement Agreement, dismiss Plaintiff's individual claims with prejudice, and dismiss the claims of any putative class and collective members without prejudice.

## II. PROCEDURAL HISTORY

### A. Plaintiff John Turner's Contracts with NILICO.

Plaintiff's first Agent Contract with NILICO was executed in August 2014, pursuant to which he sold NILICO insurance products as an outside/independent sales agent. (Declaration of Debra Gamble ("Gamble Decl.") ¶ 2.) In subsequent years, he executed additional agent contracts with NILICO that superseded the prior contract, the most recent of which was executed in March 2017 and was terminated effective June 27, 2017. (*Id.*)

With respect to arbitration, the operative March 2017 Agent Contract provides as follows:

> In the event of any dispute or disagreement arising out of or relating to this contract, the parties shall use their best efforts to settle such dispute. To this effect, they shall negotiate with each other in good faith to reach a just solution. If the parties do not reach a just solution by negotiation as described above, the Agent agrees to utilize the grievance process outlined in the OPEIU 277 agreement. If the dispute is not settled through the grievance process, then upon written notice by either party to the other, all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract shall be submitted to binding arbitration pursuant to the provisions of the collective agreement with OPEIU. The findings of the arbitrator shall be final and binding on all parties and their beneficiaries, successors, assigns or anyone claiming an interest in the contract.

(*Id.*, Ex. 2.)

In addition, the March 2017 Agent Contract also contains a provision entitled "Relationship," through which Plaintiff agreed that he was an independent contractor:

> In accordance with Section 511.21 of the New York Labor Law, the Agent acknowledges and agrees that the Agent is an Independent contractor for the Company, performing services pursuant to Article 21 or the New York Insurance Law. The Agent will be treated as an Independent contractor for all purposes, including, but not limited to: Federal and State taxation; withholding; unemployment benefits; and worker's compensation. The Agent will be paid a commission on his or her gross sales, if any, without deduction for taxes, which

> commission will be directly related to sales or other output. The Agent will not receive any remuneration related to the number of hours worked. Nor will the Agent be treated as an employee with respect to such services for Federal and State taxation purposes. The Agent will be permitted to work any hours he or she chooses. The Agent will work from his or her own office or home. The Agent may also work from the office of the State General Agent through whom the Agent ls contracted. The Company will not provide the Agent with office facilities, office supplies, or clerical support. The Agent will bear his or her own expenses, including, but not limited to, automobile, travel, and any other business expenses. See Expenses above. The Company and the Agent will comply with the requirements of Article 21 of the New York Insurance Law and the regulations pertaining thereto, but such compliance will not affect the Agent's status as an independent contractor, nor should it be construed as an indication that the Agent is an employee of the Company for any purpose whatsoever. The Agent shall not represent or imply that the Agent is an employee or officer of the Company, or a person having general authority to transact business for the Company.

(*Id.*)

**B. Plaintiff First Asserted His Claims in California on August 5, 2020.**

On August 5, 2020, Plaintiff, along with three other sales agents, filed a lawsuit in the United States District Court for the Central District of California against NILICO and American Income Life Insurance Company ("AIL"). The action was entitled *Bell et al. v. American Income Life Insurance Company et al*., Case No. 2:20-cv-07046-MWF (PJWx) (the "*Bell* Action"). (Declaration of Jeffrey M. Hammer ("Hammer Decl.") ¶¶ 2-3.) In the *Bell* Action, Plaintiff asserted claims for (1) failure to pay all wages and overtime compensation in violation of Article 19 of the New York Labor Law, and (2) failure to pay wages in violation of the FLSA. (*Id*. ¶ 3.)

On December 18, 2020, after meeting and conferring regarding the *Bell* defendants' intention to move to enforce Plaintiff's arbitration agreement and to dismiss Plaintiff and NILICO from the action for lack of personal jurisdiction, the parties to the *Bell* Action entered into a stipulation for the dismissal without prejudice of NILICO and Plaintiff pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Hammer Decl. ¶ 4.) The *Bell* parties agreed to the dismissal of Plaintiff and NILICO with the understanding that Plaintiff would re-file his claims against NILICO in this Court. (*Id.*)

**C. Following the Dismissal of Plaintiff from the *Bell* Action, Plaintiff Filed the Instant Action on January 4, 2021.**

Turner filed the instant putative class and collective action in this Court on January 4, 2021. (ECF No. 1.) As in the *Bell* Action, Plaintiff's Complaint is premised on the allegation that NILICO misclassified Plaintiff and similarly situated insurance sales agents in the State of New York as independent contractors. (*Id*., ¶¶ 2, 11, 23, 35-38.) In connection with this allegation, Plaintiff asserts purported claims for failure to pay all wages and overtime compensation and to reimburse business expenses in violation of (1) Article 19 of the NYLL (*id*., ¶¶ 58-62), and (2) the FLSA, 29 U.S.C. § 201, *et seq*. (*id*., ¶¶ 63-80).

**D. NILICO Denies Liability and Disputes the Fundamental Premises of Plaintiff's Claims.**

NILICO disputes Plaintiff's claims against NILICO and contends that it is not liable to Plaintiff or any member of the alleged putative class and collective for multiple reasons:[2]

***First***, NILICO asserts that Plaintiff's claims can only be resolved through ***individual*** binding arbitration, pursuant to the binding arbitration agreement between Plaintiff and NILICO. Although the arbitration provision of the March 2017 Agent Contract does not contain an explicit class/collective arbitration waiver, NILICO contends that the United States Supreme Court has made clear that an arbitration agreement that is silent regarding class arbitration cannot be construed to permit class-based proceedings. *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (an arbitration agreement's silence or ambiguity on the subject of class arbitration cannot serve as a basis for authorizing class arbitration); *Oxford Health Plans LLC v. Sutter*, 569 U.S. 565 (2013) ("Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them."); *Stolt-Nielsen, S.A. v. Animal Feeds Int'l Corp*., 559 U.S. 662, 686 (2010) ("An implicit agreement to authorize class-action arbitration, however, is

[2] NILICO has not yet responded to Plaintiff's Complaint. The arguments and defenses against Plaintiff's claims set forth herein are provided as non-exhaustive illustrations to the Court for settlement-approval purposes only. NILICO expressly reserves the right to allege facts and assert defenses different from and/or in addition to those stated herein in the event it is ultimately required to answer, plead, or otherwise file motions in response to the Complaint.

not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate.").[3] Accordingly, NILICO maintains that Plaintiff's claims are not appropriate for resolution in this forum, nor can they proceed on a class or collective basis.

***Second***, NILICO contends that Plaintiff and members of the putative New York class and collective were properly classified as independent contractors, and thus are not covered by the NYLL or FLSA. *See Vasto v. Credico (USA) LLC*, No. 15 CIV. 9298 (PAE), 2017 WL 4877424, at *21 (S.D.N.Y. Oct. 27, 2017), *aff'd*, 767 F. App'x 54 (2d Cir. 2019) ("Independent contractors are 'outside the reach' of the FLSA."); *see also Rose v. Nw. Mut. Life Ins. Co.*, 220 F. Supp. 3d 363, 365 (E.D.N.Y. 2016) (agreeing that "plaintiff was an independent contractor, and not an employee," of life insurance company and "thus exempt from New York's minimum wage and overtime laws"); *Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017) (holding that workers were independent contractors where they had "freedom in choosing when, where, and with what regularity to drive [defendant's] clients" and set their own hours).

***Third***, setting aside the question of Plaintiff's independent contractor status, NILICO further contends that even if Plaintiff were an "employee," his claims would nonetheless fail because Plaintiff falls within the outside sales exemption from the minimum wage and overtime requirements of the FLSA and NYLL. 29 C.F.R. § 541.500; N.Y. Lab. Law § 651(5); N.Y. Comp. Codes R. & Regs. Tit. 12, § 142-2.14(a), (c)(5); *see also Chenensky v. New York Life Ins. Co.*, No. 07 CIV. 11504 (WHP), 2009 WL 4975237, at *7 (S.D.N.Y. Dec. 22, 2009) (concluding that life insurance sales agent "qualified as an exempt outside salesperson" and rejecting FLSA and New York state law claims); *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 442 (S.D.N.Y. 2017).

[3] Numerous courts have enforced similar arbitration agreements between NILICO's corporate affiliate, American Income Life Insurance Company, and insurance agents and compelled the parties to individual arbitration. *See, e.g.*, *Patterson v. Am. Income Life Ins. Co.*, No. 4:19-CV-00918-KGB, 2020 WL 6387555, at *7 (E.D. Ark. Oct. 30, 2020); *Bell et al. v. Am. Income Life Ins. Co.*, 2:20-cv-07046-MWF (PJWx), ECF No. 39 (C.D. Cal. Apr. 5, 2021); *Berry et al. v. Am. Income Life Ins. Co.*, 2:20-cv-00110-LPL, ECF No. 37-38 (W.D. Pa. Sept. 20, 2020); *see also* Hammer Decl. ¶ 7.

***And fourth***, NILICO contends that Plaintiff's FLSA claim is barred as a matter of law on statute-of-limitations grounds, regardless of whether the two-year or three-year statute of limitations applies. *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009) (providing that FLSA statute of limitations is two years unless plaintiff carries his or her burden of proving that the alleged violation was willful, in which case, the limitations period is three years).[4] On this point, NILICO asserts that Plaintiff did not bring his FLSA claim against NILICO until the filing of the *Bell* Action on August 5, 2020—*more than three years* after the termination of Plaintiff's final Agent Contract with NILICO on June 27, 2017. (*See* Hammer Decl. ¶ 3; Gamble Decl. ¶ 2.)

As noted, Plaintiff maintains that his claims are not time-barred, that he was misclassified as an independent contractor and no exemptions apply to him, and that his claim can proceed on a collective basis under the FLSA and his New York State Law claim can proceed on a class basis.

### E. After Discussing Potential Motion Practice by NILICO, the Parties Engaged in Arm's-Length Settlement Discussions.

In the absence of a settlement, it was NILICO's intention to file on or before the responsive pleading deadline motions to (1) compel individual arbitration of this matter, and (2) dismiss Plaintiff's FLSA claim on statute-of-limitations grounds pursuant to Federal Rule of Civil Procedure 12(b)(6). Should the circumstances have warranted, NILICO was also prepared to move at the appropriate time for summary judgment as to any surviving claims on the grounds that (a) Plaintiff was properly classified as an independent contractor and thus was not a covered employee under the NYLL or FLSA, and (b) even assuming, *arguendo*, Plaintiff was an

[4] NILICO also contends that Plaintiff's conclusory allegations of willfulness are insufficient to plausibly establish applicability of the three-year statute of limitations, and that Plaintiff's FLSA claim is thus time-barred under the two-year statute of limitations. *See, e.g.*, *Watkins v. First Student, Inc.*, No. 17-CV-1519 (CS), 2018 WL 1135480, at *8 (S.D.N.Y. Feb. 28, 2018) (conclusory allegation that discovery would show defendant's violations were calculated and deliberate were insufficient to meet *Iqbal-Twombly* plausibility standard).

employee, he was nonetheless exempt from coverage under the NYLL and FLSA under the outside sales exemption. *See* Part II.D *supra*.

On April 12 and 19, 2021, counsel for NILICO met and conferred with Plaintiff's counsel regarding NILICO's intent to move to compel arbitration and dismiss Plaintiff's FLSA claim and the pertinent facts and authorities supporting those anticipated motions. (Hammer Decl. ¶ 5; Declaration of Kiley Grombacher ("Grombacher Decl.") ¶ 5.) In the course of those discussions, the Parties expressed an openness to exploring a resolution of Turner's claims on an individual (*i.e*., non-class, non-collective) basis. (Hammer Decl. ¶ 5; Grombacher Decl. ¶ 5.) Following arm's-length settlement negotiations that occurred via telephone and e-mail, the Parties agreed in principle to resolve the matter for $15,000 on April 23, 2021. (Hammer Decl. ¶ 5; Grombacher Decl. ¶ 5.)

### F. The Parties Filed a Notice of Settlement and Stipulation for Dismissal.

The Parties filed a Notice of Settlement with the Court on May 4, 2021, in which they advised the Court that the Parties had reached a settlement, were in the process of finalizing a long-form settlement agreement, and intended to file a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) once the Parties finalized their settlement. (ECF No. 31.) The Court issued a text order on May 7, 2021 directing Plaintiff "to file a notice of dismissal or a status report regarding finalizing settlement by 6/4/2021." (ECF No. 32.) On June 1, 2021, Plaintiff filed his notice of dismissal of Plaintiff's individual claims with prejudice and of the claims of putative class and collective members without prejudice. (ECF No. 33.) On June 7, 2021, the Court issued an order directing the Parties to file a motion to approve the settlement of Plaintiff's FLSA claim. (ECF No. 34.)

### G. The Key Settlement Terms.

The Parties' operative Settlement Agreement and Release (the "Settlement Agreement") was executed on June 28, 2021. (Hammer Declaration, Ex. 1.) The key settlement terms are as follows:

- **Payment by NILICO**. Defendant is obligated to pay to Plaintiff a total of $15,000 in settlement of his claims, with (a) $14,498 being tendered to Plaintiff, and (b) $502 being tendered to Plaintiff's Counsel for Plaintiff's alleged attorneys' fees and costs. (*Id*., § 2.2.)
- **Non-Admission of Liability**. The Parties acknowledge that the Settlement Agreement constitutes a resolution of disputed claims, and that neither Party admits any liability. (*Id*., § 4.2.)
- **Release and Dismissal by Plaintiff**. Plaintiff has agreed to a limited release of claims that (a) Plaintiff actually asserted in this action and the *Bell* Action on his own behalf, and (b) arise out, are related to, or otherwise could have been asserted in connection with the subject matter and allegations in Plaintiff's Complaint or in the *Bell* Action. (*Id.*, § 3.1.) The release and contemplated dismissal with prejudice apply only to Plaintiff's individual claims and do not encompass any claims of putative class or collective members. (*Id.*, § 2.2.) As indicated by the notice of dismissal filed by Plaintiff on June 1, 2021, the claims of putative class and collective members are to be dismissed without prejudice. (*See* ECF No. 33.)
- **Non-Disparagement**. The Settlement Agreement also includes a limited-scope non-disparagement clause, under which Plaintiff agreed to refrain from making disparaging remarks regarding NILICO and other released parties; provided, however, that Plaintiff is permitted to (a) make truthful statements regarding his experiences with NILICO and the other Defendant Released Parties, and (b) testify "truthfully regarding his experiences with NILICO, AIL, and/or any of the Released Defendant Parties in response to a lawfully issued subpoena or court order." (Hammer Decl., Ex. 1, § 5.1). In exchange, in response to inquiries about Plaintiff's association with NILICO, NILICO agrees to "confirm Plaintiff's contract period as an insurance sales agent" and to refrain from further commentary. (*Id*., § 5.2)

- **Public Filing**. In light of the filing of the Settlement Agreement in the public record, it does not contain confidentiality provisions, nor is any restriction placed on future applications by Plaintiff to contract with NILICO.

## III. THE PARTIES' SETTLEMENT IS FAIR AND REASONABLE.

### A. Legal Standard for Approval.

Although the Second Circuit has not yet held whether district court approval is necessary to effectuate a plaintiff's voluntary notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the DOL to take effect." *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). To the extent approval is required, district courts must review FLSA settlements to determine if they are "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See id*. at 203, 206 (citing *Lynn's Food Stores, Inc. v. United States Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir.1982)). In so doing, a court must evaluate the totality of the circumstances, focusing on factors including "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *de Jesus Prudente v. Brother's Bakery Cafe Corp*., No. 21-CV-594 (RA), 2021 WL 1999465, at *1 (S.D.N.Y. May 19, 2021) (quoting *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In support of a settlement, the parties must provide sufficient information for the Court to evaluate the bona fides of the dispute. *Guareno v. Vincent Perito, Inc*., No. 14CV1635, 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014) (noting that "the 'employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages") (quotation omitted). However, in reviewing FLSA settlements, "a strong presumption in favor of finding a settlement

fair [is applied], as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Cronk v. Hudson Valley Roofing & Sheetmetal, Inc.*, No. 20-CV-7131 (KMK), 2021 WL 38264, at *2 (S.D.N.Y. Jan. 5, 2021) (quoting *Lliguichuzhca v. Cinema* 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013)).

**B. Plaintiff Faced Significant Litigation Risks in the Absence of this Settlement.**

As set forth above, *supra* Section II.D, the Parties have a bona fide dispute as to whether Plaintiff is an employee covered by the provisions of the FLSA and NYLL in the first instance. Whereas Plaintiff asserts he is an employee entitled to minimum wage and overtime, NILICO contends that Plaintiff was properly classified as an independent contractor, as courts have found repeatedly as to insurance sales agents. In addition, NILICO argues that even if Plaintiff were an employee, he nonetheless would be exempted from coverage under the NYLL and FLSA under the outside sales exemption. In support of these defenses, NILICO cites the Agent Contract between NILICO and Turner, which contains provisions (i) expressly acknowledging Plaintiff's independent contractor status, (ii) providing for Plaintiff's remuneration exclusively by commission, (iii) establishing that Plaintiff may work any hours he chooses, (iv) requiring that Plaintiff work from his own home, (v) forbidding Plaintiff from using NILICO's facilities, office supplies, or clerical support, and (vi) requiring Plaintiff to bear his own operating costs. (Gamble Decl., Ex. 2.) If NILICO were to succeed in establishing ***either*** that Plaintiff was an independent contractor ***or*** an outside salesperson within the meaning of 29 C.F.R. § 541.500 and N.Y. Lab. Law § 651(5), Plaintiff would not be entitled to recover any sum whatsoever. *See* Part II.D *supra*; *cf. Vasto v. Credico (USA) LLC*, No. 15 CIV. 9298 (PAE), 2017 WL 4877424, at *21 (S.D.N.Y. Oct. 27, 2017), *aff'd*, 767 F. App'x 54 (2d Cir. 2019); *Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 442 (S.D.N.Y. 2017) (even assuming, *arguendo*, that independent contractor sales agents were employees, summary judgment was nonetheless warranted on FLSA and NYLL overtime and minimum wage claims under outside sales exemption; the field agents bore multiple indicia of outside sales agent status, including that they were compensated by commission and worked outside of office with minimal supervision).

Setting aside the fundamental dispute over Plaintiff's coverage under the FLSA and NYLL, NILICO additionally contends that Plaintiff's FLSA claim is time-barred regardless of whether the three-year or two-year statute of limitations applies. While Plaintiff impliedly alleges that the statute of limitations was equitably tolled, NILICO argues that there is no basis for equitable tolling. Even assuming Plaintiff were able to establish the requisite willful conduct necessary for application of the maximum three-year statute of limitations, NILICO contends that the limitations period expired on June 27, 2020 (*i.e*., three years after termination of the most recent agent contract)—well before Plaintiff filed the *Bell* Action on August 5, 2020. As with the independent contractor and outside sales exemption defenses, if NILICO prevailed in establishing that Plaintiff's FLSA claim was time-barred either via a motion pursuant to FRCP 12(b)(6) or at summary judgment, NILICO contends that Plaintiff's recovery under FLSA would be zero.

As to Plaintiff's purported class and collective claims on behalf of putative class and collective members, in the absence of this settlement, NILICO contends that Plaintiff faces a significant risk that the Court would compel his claims to ***individual*** arbitration—as the district court in the *Bell* Action did with respect to Turner's former co-plaintiffs who worked as agents (Hammer Decl. ¶ 7)—thereby precluding any class- or collective-wide recovery. *See Lamps Plus, Inc.*, 139 S. Ct. at 1417; *Oxford Health Plans LLC*, 569 U.S. at 565; *Stolt-Nielsen, S.A.*, 559 U.S. at 686. Accordingly, resolution of this matter on an individual basis is appropriate.

### C. Taking into Account Plaintiff's Litigation Risks, the Settlement Amount Is a Fair and Reasonable Compromise of Plaintiff's Claims.

In view of the potential risk that Plaintiff would not recover any amount through this litigation, the Parties believe that the settlement amount is a fair and reasonable valuation of Plaintiff's claims. The Parties have agreed that 33 percent of the settlement payment to Plaintiff (or $4,832.62) is to be allocated to the settlement of Plaintiff's FLSA claim. (Hammer Decl., Ex. 1.) The remaining 67 percent (or $9,665.38) is allocated towards the remaining released claims, including the NYLL claim, which has a six-year limitations period, which does not face a

potential statute of limitations problem as does Plaintiff's FLSA claim.[5]

As to the FLSA claim, the Parties agree that $4,832.62 is a fair and reasonable compromise of their bona fide dispute, taking into account the maximum amount that Plaintiff could recover under the FLSA, as well as the significant legal risks. To illustrate, assuming NILICO did not prevail on its statute of limitations defense, the only period for which Plaintiff could potentially recover any alleged unpaid wages under the FLSA is the 19 weeks spanning February 13, 2017 (*i.e.*, earliest recovery date alleged in the Complaint, assuming, *arguendo*, that equitable tolling applied) to June 27, 2017 (*i.e.*, the termination date of Plaintiff's last Agent Contract with NILICO). (*See* Compl. ¶¶ 7, 65; Gamble Decl. ¶ 2.) During this period, NILICO paid Mr. Turner approximately $17,608 in commissions (*id.* ¶ 3), representing approximately $927 per week on average. Assuming, for the sake of argument only, that Plaintiff could establish that he worked 60 hours per week during the relevant period, those payments equate to a regular rate of pay of approximately $15.45 on average. If Mr. Turner were to prevail on his FLSA claim, he would be entitled to approximately $2,935.50 in unpaid overtime and an additional $2,935.50 in liquidated damages, or $5,871.

The amount of the settlement allocated to Plaintiff's FLSA claim (*i.e.*, $4,832.62) represents 82.3% of Plaintiff's potential recovery. In view of the risks that the Court might find the FLSA claim time-barred or otherwise conclude that Plaintiff is not a covered employee under the FLSA, this represents a reasonable settlement of Plaintiff's FLSA claim. *Cf. Aguilar v. N & A Prods. Inc.*, No. 19-CV-1703, 2019 WL 5449061, at *1–2 (S.D.N.Y. Oct. 24, 2019) (approving settlement of $40,000, which represented just 7% of plaintiff's potential recovery $570,000, based in part on significant litigation risk posed by the defendant's argument that plaintiff was an exempt employee); *Zorn-Hill v. A2B Taxi LLC*, Nos. 19-CV-1058, 18-CV-

[5] The parties do not seek approval of the settlement of the NYLL claim, for which approval by the Court is <u>not</u> required. *See, e.g.*, *Yunda v. SAFI-G*, No. 15-CV-8861, 2017 WL 1608898, at *1–2 (S.D.N.Y. Apr. 28, 2017) ("The fact that there may be provisions in the NYLL settlement agreement that could not be included in the FLSA settlement is immaterial because the NYLL settlement agreement does not require judicial approval . . . .").

11165, 2020 WL 5578357, at *4 (S.D.N.Y. Sept. 17, 2020) (approving settlement amount that constituted 12.5% of the plaintiffs' realistic best-case scenario).

**D. The Settlement Avoids Protracted Motion Practice and Uncertainty.**

In the absence of a settlement, the Parties would have immediately engaged in potentially protracted motion practice, which would have featured (1) a motion to compel individual arbitration by NILICO, (2) a motion to dismiss Plaintiff's FLSA claim on statute-of-limitations grounds pursuant to FRCP 12(b)(6), and (3) a motion for conditional certification of the putative collective by Plaintiff. (Hammer Decl. ¶ 7; Grombacher Decl. ¶ 7.) Following the resolution of those motions, further proceedings likely would have included a motion for summary judgment as to Plaintiff's surviving claims, whether in this Court or in an arbitral forum. This settlement, therefore, avoids the substantial anticipated burden to the Parties in establishing their respective claims and defenses, as well the uncertainty surrounding Plaintiff's recovery. *See, e.g.*, *Medley v. Am. Cancer Soc.*, No. 10-CIV-3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010) (approving settlement enabled the parties to avoid "anticipated burdens and expenses in establishing their respective claims and defenses . . . and litigation risk.").

**E. Plaintiff's Counsel's Share of the Settlement Amount Is Reasonable.**

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—may seek attorneys' fees and costs. Plaintiff's counsel seeks no fees. "An award of costs normally includes those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (internal citation omitted).

Here, Plaintiff's counsel seeks only Court filing costs, which total $502. *See* ECF. No. 1 (filing fee of $402); ECF No. 18 (Pro Hac Vice Motion filing fee of $100). These costs represent less than the costs that might be billed to a fee-paying client and equate to just 3.34% of Plaintiff's total recovery. Plaintiff's Counsel's costs are thus reasonable.

**F. The Settlement Terms Are Reasonable.**

The release of claims provided in the Settlement Agreement is appropriately limited in scope. (Hammer Decl., Ex. 1, § 3.1.) As with other settlements that have recently been approved within the Second Circuit, here, Plaintiff has agreed to release those claims that were actually asserted in this action, or that otherwise could have been asserted with respect to the allegations in the Complaint. *de Jesus Prudente v. Brother's Bakery Cafe Corp*., No. 21-CV-594 (RA), 2021 WL 1999465, at *2 (S.D.N.Y. May 19, 2021) ("This release of claims is limited to the wage-and-hour issues asserted in this action or related claims that could have been asserted. Similar releases are routinely approved.").

Similarly, the non-disparagement clause set forth in the Settlement Agreement is appropriately limited in scope. (Hammer Decl., Ex. 1, § 5.1) "'[N]on-disparagement clauses are [not] per se objectionable,' and may be fair and reasonable so long as they 'include a carve-out for truthful statements about plaintiffs' experience litigating their case.'" *de Jesus Prudente*, 2021 WL 1999465, at *2 (quoting *Lazaro-Garcia v. Sengupta Food Servs*., No. 15-CV-4259 (RA), 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015)). Here, the non-disparagement clause contains precisely such a carve-out and is therefore fair and reasonable.

**G. The Settlement Is the Product of Arm's-Length Negotiations Between the Parties.**

The settlement of this action was reached after adversarial litigation in two forums over the course of eight months. Settlement negotiations began in earnest on or around April 12, 2021 when the parties began meeting and conferring regarding NILICO's anticipated motions to compel individual arbitration and dismiss Plaintiff's FLSA claim pursuant to FRCP 12(b)(6). The settlement amount was reached through good-faith, arm's-length negotiations that transpired by phone and e-mail. (Hammer Decl. ¶ 5; Grombacher Decl. ¶ 5.) They reflect a reasonable, good faith compromise of Plaintiff's disputed claims, and were not the product of collusion between counsel.

## IV. CONCLUSION.

For the foregoing reasons, the Parties respectfully request that the Court approve the Parties' settlement and issue an order dismissing (a) Plaintiff's individual claims with prejudice, and (b) the claims of putative class and collective members without prejudice.

DATED: June 28, 2021

**KING & SPALDING LLP**

By: /s/ Arwen Johnson ____________________

Arwen Johnson
*Pro hac vice*
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone: (213) 443-4355
Email: arwen.johnson@kslaw.com

*Attorneys for Defendant National Income Life Insurance Company*

DATED: June 28, 2021

**BRADLEY/GROMBACHER LLP**

By: /s/ Kiley L. Grombacher _______________

Kiley L. Grombacher
*Pro hac vice*
31365 Oak Crest Dr., Suite 240
Westlake Village, California 91361
Telephone: (805) 270-7100
Facsimile: (805) 270-7589

*Attorneys for Plaintiff John Turner*